The next case on the calendar is United States v. Kodo. Good morning. I'm Martin Vogelbaum. I'm here for Mr. Kodo, who is currently serving a sentence that approaches 10 years for a conviction on which we contend the government presented insufficient evidence on one of the essential elements. Namely, Mr. Kodo was convicted of witness retaliation, and it's our position that the government presented insufficient evidence that he intended to retaliate against the witness for his attendance at or testimony in a specifically federal proceeding, an official federal proceeding. Isn't the federal element of that a jurisdictional element? I don't think it is, Judge. I don't think, to be clear, as far as I can tell, there are no decisions directly on point with the exception of the Denham District Court decision that is cited in our brief. The Supreme Court's decision, if you will, is pretty close. It's a different statute, but that's obviously assaulting a federal officer, right? Yes. And they made clear in that case that the federal status of the officer is not something that you need scienter for. So, I mean, that's about as close as you can get, right? Actually, I would disagree with that, Your Honor, and I think Denham explains this well. There are a few reasons for the disagreement. First of all, it seems to me that the plain sort of language of the way the statute plays out leads to the conclusion that it's not merely jurisdictional. The intent to retaliate extends through the second clause to the attendance and testimony at an official federal proceeding. There's no suggestion in the statute that the mens rea somehow cuts off after attendance and testimony, leaving official proceeding merely as a fact to be proved. But secondly, this statute was enacted at the same time. Well, the proceeding part has to be known. You have to know that the person is testifying in a proceeding. But the question is, do you have to know the part about the proceeding being federal? Why is that something that the defendant should know? Why should we read the statute as requiring that the defendant know the proceeding was a federal criminal trial as opposed to a state criminal trial? I mean, people who retaliate against cooperators generally don't care at all whether the court in which the person cooperates against his old buddies is federal or state. The Congress might, and I think here Congress did and there are indications of it. The principle one being that 1512, the immediately proceeding statute, which was enacted at the same time as 1513, contains an express provision at G1, is the subsection, I think, specifically saying that the federal offense or federal officer kind of provision of that statute is expressly excluded from the mens rea requirement. In other words, Congress made it clear in the statute that was enacted in paramateria that in this case you need not prove that the defendant knew the federal nature, but didn't include such an express exclusion in 1513. And to the extent that that leaves any ambiguity, I think Denham points to a significant amount of legislative history that clarifies it and clarifies that there are really two reasons for that. One, the supposition that in a 1512 case you're going to be less likely to have awareness or proof of the federal nature of the investigation because it's nascent, basically, whereas in a 1513 case you're talking about something that's already transpired and is more likely to be known and therefore more provable. And another consideration might be the sort of thing that the Supreme Court talked about in Bond, which is that in some cases Congress really might want to just confine the federal criminal jurisdiction to make it really clear that we're aiming specifically at cases where there is an anti-federal scienter basically involved. And I think that that, based on the language of the statute and the companion statute and the legislative history, is what we have here. And here we have no I think it's 1512 G1, Your Honor. I believe so. It's discussed extensively in Denham as well. And here we really have no connection between, although there's definitely a sense in the air that this person was a snitch or a rat, there's really no evidence that Mr. Cotto knew specifically that he was a federal rat. Go back to something you said. Why wouldn't it be Congress's intent to try to protect all federal proceedings for any type of interference regardless of whether the person knew it was federal or not? Why wouldn't that be the basic thing that Congress would want to do in this type of statute? We don't want anybody tampering or interfering with federal proceedings. Why would they narrow it to say, we want them to know there's a federal interest? That doesn't make a lot of sense to me. What would be the point of that? Why wouldn't Congress want to protect all proceedings from interference? Because I think that the, well, as the court explained in Vaughn, sometimes what Congress wants to do is to preserve the sort of traditional line between federal and state criminal jurisdiction. The states are perfectly well capable, of course, of enacting these sorts of statutes to protect their own judicial proceedings. This just cabins this off in the federal case to federal proceedings, and you might have... Who's going to protect a federal proceeding where the person, where it is actual interference, where the person doesn't know whether it's federal or not? Who's going to protect that one? Well, you're just not going to be able to prove that case, I suppose. But I think that Congress in the legislative history here makes clear that the assumption is, is that when you do have an actual... What are we doing? Why the state couldn't prosecute that? If there's a state proceeding... I understood the question, I'm sorry, to be about a federal proceeding where the person didn't... Know that it was a federal proceeding. Know that it was a... That would be, I assume, just a not guilty verdict. A federal proceeding where the person did not know that it was a federal proceeding... The state wouldn't bring that charge, right? No, the state wouldn't bring that charge, no. Your principal argument for the construction of 1513 is 1512. That we should read from the express provision of 1512 that there is a requirement of proving knowledge that is the federal proceeding. There isn't. Or that there isn't a requirement. No, that there is a requirement. That there is a 1513. In 1513, because if there wasn't, 1513 would have a provision similar to the... Or you could have a general provision, for example, in 1515, which has the definitions of what a law enforcement officer is. Isn't it correct that the federal government wouldn't have a constitutional basis for criminalizing retaliation against a witness in a state proceeding? There'd be no federal interest to be enforced. This was put in because federal law has no constitutional basis for covering retaliation against a witness in a state proceeding. That's a reason for requiring... That's not just a reason, it's an essential reason for the inclusion of the requirement that it be a federal proceeding. It's not a matter of interstate commerce. It's not a matter of copyright. It's not a matter of taxation. What brings it within the competence of Congress? That it has to be a federal proceeding. Well, and that is one reason. But then again, in the cases like, for example, 1512, you know, there's the standard that the Supreme Court enacted in Fowler or applied in Fowler is that there has to be a substantial probability that there was an attempt to hinder the communication of a federal offense. So, in other words, you know, even if even if no federal offense results or is prosecuted, you know, the possibility that there could have been interference. That's what that's what makes it a matter of federal concern and that's what makes it a matter of properly legislated by Congress and something that's outside of Congress's lawful authority. And in that case, Congress offered to say specifically, we're not going to apply the sanctions. I take it that in the 1512 is the only argument you've made that you don't know of any case law that supports you on this. I don't I don't think there is any case that's been decided that specifically decides this, although this court in the Brown case did in passing say that there has to be some kind of adequate awareness of the of the federal scope of the of no, it didn't say it has to be awareness of the federal scope. It said that it said that the evidence supported that there was awareness that there was a federal proceeding that didn't say in any way that there has to be awareness of the federal nature of the proceedings. I didn't I didn't intend to imply that the court held that. I don't even think that was well, whether held or said it neither held nor said that there has to be awareness of the federal nature. It said that there was evidence that would support awareness that there was a federal proceeding. Can I ask about the sufficient? Oh, I'm sorry. I was just going to I was just going to clarify one other thing, which is that while I do think the construction of the statute that I'm urging is the right construction, I would also and I understand that the court has to interpret the law as the court reads it. You know, here the government not only didn't make the argument that, you know, knowledge of the federal nature of the proceeding wasn't a requirement, you know, it effectively conceded that it was in the jury was so instructed. So it seems to me that in this case, anyway, you have a fact finder that was instructed these are the elements of the offense. And then so on the sufficiency question, the question is, was there transmission of that integral piece of knowledge to Mr. Cotto or to Mr. Hecht? And, you know, I think pretty convincingly, everybody knew this guy was, was cooperating, but not where it's really not Mr. Cotto. To address that for just a moment. I mean, I realize there's no conversation, at least that I've been able to find in the record. Maybe the government will tell me I'm wrong where a witness says this was directly communicated to, to Mr. Cotto, to your client. But there is testimony. I think Mr. Colon testified that people are suspicious because you go to federal court day after day, every single day. There is, there seems to be evidence that, that other, that others in the jail were aware that, that there was a van that goes to court and, and it could generally, I mean, isn't there some hanging over this testimony that there is a general awareness that this, a van is going to federal court every day. And what do we do with that? I mean, on a sufficiency challenge. So I think that, I think that the court has, your honor has isolated the one instance of testimony in which somebody says, Mr. Colon says, yeah, I think he was going to federal court every day. And that made me suspicious. I would point out also that on cross-examination, he then directly contradicts himself and says he doesn't, he doesn't know where he was going. As to the sort of more general question, I don't think it's true. I mean, really most, most of this is confined over two days, May 22nd and May 23rd. So while it's certainly true that people were aware that he was frequently out of the jail and there's that kind of general testimony, what, where the federal stuff really comes into play is with this return trip from federal court on May 22nd with Mr. Ramos and Mr. Escalera and Mr. Maldonado. And it's the connection I think between those federal inmates or rather the lack of a connection between those federal inmates over that sort of 24 hour period in terms of transmitting the essential information to Mr. Cotto, who after all is a state prisoner and there's no indication that he was suspicious previous to this message being allegedly sent by Mr. Escalera, that this is in the nature of federal testimony. And in fact, Mr. Ramos says that it's only after the assault actually takes place that Mr. Cotto communicated to him that Mr. Maldonado, what one would hypothesize having happened, had there been this sort of general awareness that the person or, you know, complete awareness on everybody's part that he was a snitch and then there was a snitch in federal court and Mr. Hecht, notwithstanding his guilty plea to the indictment, testified at trial that I didn't know if he was testifying at all at the time I beat him. And I certainly didn't know where he was testifying. I understood that later. Right. So, I mean, these aren't just competing inferences. I mean, they're just, it's directly conflicting testimony. It's going back to Judge Levinson mentioned Mr. Colon, you would have to essentially say the jury wasn't allowed to credit the direct testimony of Mr. Colon because if they were able to do that, certainly a reasonable inference could be drawn if he was told this guy is testifying and knew that he was going back and forth to federal court, that the place that he was testifying in was federal court, right? Isn't that a reasonable inference that the jury could draw if they could, if they would be permitted to credit Mr. Colon's testimony? I think you can draw that inference, but I don't think that that inference in and of itself, I suppose, is what I was saying to Judge Livingston in light of the other evidence is adequate to support the element. There's no evidence that anyone said to, uh, to this defendant that he's a snitch in federal court. There is not. No, no. But he was snitching on a Latin King higher up, which I realize I'm greatly over my time. So I'll step aside here. But that is also why the cross examination and confrontation and presentation of extrinsic evidence about Mr. Heck's state of mind and the curtailing of that is so essential here because it seems to me that is the central point on which this conviction rises or falls. Sorry, Monica Richards on behalf of the United States, may it please the court. The testimony here certainly wasn't crystal clear that somebody said to somebody, go beat him up because he was testifying in federal court. That's just not the world that we were dealing in. That's not what this case was about. We had folks who were in jail who were being transported back and forth to federal court and federal court only. That's all the testimony was about. Escalera was in an adjoining cell with Marcial who was on trial in federal court. There was only a van going to federal court? The three defendants who were in the van were going to and from federal court, yes. But we don't know if there was also a van that was operating to go to state court. Do we? I don't know. No. I mean, that doesn't matter for the purposes of the case here. The folks who testified only testified about that van going to and from federal court. In all likelihood, there were lots of people who were taken to state court. This is a state prison in Cattaraugus County, and it was housing some federal prisoners or detainees who were involved in trials in federal court. But presumably, the main population of the jail was state court. Right. And the facts supported, thank you. that on the same floor where Escalera was being held in a holding cell in a courtroom level, not at the main level but the courtroom level, on the ninth floor of our district courthouse. And it was at that moment that it's an entirely reasonable inference that Escalera had the knowledge that he was testifying in a federal court proceeding. There they were in federal court. There they were being transported to and from federal court altogether. I personally find it highly dubious that this statute should be interpreted to require knowledge by the retaliator who is being prosecuted, knowledge that the thing he's retaliating for was testimony in a federal court proceeding as opposed to any court proceeding. I don't know why that knowledge should be required, and I'm puzzled why the government seems to have just accepted that position. I don't know, Your Honor. I hate it that I was sitting there and you all were talking about things that I wasn't prepared to address, and I apologize for that. And if it's a post-argument letter brief, then I'm happy to do that. But I think that the point – You may in this case be asking the parties to submit a post-argument letter brief on a couple of issues. Okay. We'll talk about it a little bit later. Okay. It seems to me that even if arguably sufficient, your evidence of this person's knowledge that the cooperation, the ratting was in federal court is very, very weak. Oh, I disagree. I'm sorry. But I disagree. That's where I thought I was going to be able to go. You base it entirely on other people knew it, other people who went in the van to federal court where the trial was taking place. They knew, and some of them told each other, but you don't have any evidence that anybody told the defendant. Oh, I certainly do, Your Honor, respectfully. Mr. Escalera, who was in the van, who was on the ninth floor, is one of the co-defendants, was one of the original co-defendants. He was on trial with Mr. Cotto. So he knew because he was in federal court. If he tells, do you have evidence that he told Cotto? Yes. No, not that Escalera told Cotto. We have that Escalera and Ramos were in the van returning from federal court together, that Maldonado had been ratting in a death penalty case, and they were all coming to and from the federal courthouse at that point. That's in the record. There's lots of evidence that other people knew it was in federal court, but that's not the issue. And then we have Ramos told Cotto, so I'm just drawing the line, that Escalera said Maldonado was a rat. So that's Cologne's testimony, as Judge Bianco noted. And then from there, we also have Beattie, who was a witness. I just blanked on his first name. I'm sorry. But there was he told Cotto, he passed the message along from Escalera to Cotto, saying again that they were, and this is Hecht's testimony, he heard Beattie tell Cotto that he was a rat in the federal proceeding and something had to be done. We had, again, Ramos told Cotto. So we have two people telling Cotto that from two different witnesses. Wait a minute. Ramos told Cotto he was a rat, not that Ramos told Cotto he was a rat in federal court. Your Honor, that's the inference. And I understand the court's concern there. But that's the, everyone. Don't misrepresent the testimony. That's the question, is whether it's an inference that's sufficient to satisfy the only witness you have who actually used the word federal court. It's Cologne. No, Hecht also, sir. Hecht told the defendant it was federal court. What page of the transcript did Hecht testify that he told the defendant, not someone else, told the defendant it was federal court? Not an inference. He told him it was federal court. It was, I just want to make sure I'm getting this right. Hecht on the record. I've got appendix 611. Others knew Mal Donato was going back and forth so much to federal court. That's what I have in my notes. Say that again? Sorry. Thank you. Not that others knew. I want to make sure that he told the defendant. Hecht had that knowledge. And your Honor's question was on page 611. Hecht told the defendant it was federal court. No, Hecht didn't tell the defendant. Hecht heard the defendant. Heard the defendant say it was federal court? We're focused on the word federal. That's really what all this comes down to. The only person who used the word federal in the presence of the defendant is Cologne. Which may be enough, but I just want to make sure that the record is clear. I guess I don't understand. I understand the court's concern with regard to that specific, that citation that I referred the court to is general. People knew he was going back and forth to federal court. And the snitch part. So that's accurate. I'm sorry that I went in that direction. But with regard to... You're saying there's evidence that Cologne told the defendant that the snitching was in federal court? No, Cologne overheard Ramos and Cotto. That's on A569. A, I'm sorry, Appendix 569. They all knew that he was in court today. In court today is court with everyone who was in that van, which included Ramos, who was one of the speakers. I'm not sure if I'm waiting for a question or if I should continue. So we're looking at this specific conversation. What other evidence would you rely on? I mean... So we have Escalera to Beattie in the classroom. That was per the testimony of Esteban Ramos-Cruz. Then we have Beattie to Cotto, and that was per the testimony of Hecht. We also have Ramos to Cotto. That was per the testimony of Cologne. And then we have Cotto to Hecht. And Hecht, again, was one of the people, and Cologne, frankly, who were talking about him being a rat. And generally, yes, that was talking about being a rat generally. But... A569, I don't see the word federal on the page. They're talking about in court today, Your Honor. Everybody was in federal court that day. I'm sorry? Read me the line of testimony or the lines of testimony that you say show that Cotto heard that it was federal court. No, that Cotto heard he was in court today with Ramos, yes. So it's not, hey, guys, I was in court today, and let's go beat this guy up. It's a federal proceeding against a Latin king. I mean, we do not get that specific. What are you talking about? Give me the exact lines of testimony that you have. So we have, I'll back up, Your Honor, respectfully. I'll back up then to page 569. Line? Line? What line? Page 569, line what? It's the entire page, Your Honor. What did Mr. Cotto do? I'm backing up to page 568 if I could. They were saying that he knew that he went to court today. Mr. Cotto was wondering whether Ali was at court. Those are lines 10, 11, 12 on page 568. And then Mr. Cotto got up from the table, yes. Where did he go? To the end of the gallery. The guy from New York City was still sitting there? Yes, on page 569. What did Mr. Cotto do? He called to Mr. Ali. Mr. Ali is Mr. Maldonado, to clarify that. What did he say? He asked him, did you go to court today? Came back, he said, that's him, that's the guy. That's all 569. And 570. So from Mr. So while, again, the evidence isn't crystal clear, it doesn't go, excuse me, I'm sorry, my time is over. If I can continue. The reasonable inferences that were drawn by this jury with regard to the matter that they were asked to draw, when within 24 hours, 36 hours time, we have Maldonado testifying in court and then Maldonado getting assaulted in the jailhouse courtyard where all of these same witnesses and actors were living in the same housing unit, that was testimony from one of the officers, that they all lived in the same section of the housing unit, with the exception that Mr. Escalera was in an upstairs unit and there was language reflecting that the direction came from a Latin king upstairs. And then we have the testimony of Mr. Ramos, who looped in the fact that they were indeed Latin kings, that he saw them indicating, making gang signs, talking to each other in a way that indicated to him that they were Latin kings, that they were in the same gang together. So those inferences that the jury was asked to draw from those conversations, and yes, they were multiple, they were varied, and there were contradictions, but there was also corroboration. And the corroboration came in through some of the video evidence, the corroboration came in through, in fact, the very witnesses who testified, that these things happened. Nothing is, with regard to the manner in which things proceeded, was also corroborated by the housing unit records and the testimony regarding the different transports that occurred. Let alone the fact that after the testimony, there was more evidence of folks yelling, he is a rat, and people knowing that he was assaulted because he was a rat. If there's any other questions that come up on rebuttal with regard to the other aspects in the brief, I'd respectfully. I mean, just making sure I understand the sufficiency argument. So you're relying largely on the argument that I don't, we don't have to point to a specific conversation in which we can prove that the defendant was told this is a federal proceeding, that that's in the transcript. We think that the circumstantial evidence of how the different conversations that occurred in and around this crime, and the fact of the van going back and forth every day to federal court, and the fact of how the communications flowed from the Escalara back to the courthouse are sufficient for a jury to have made the inference that he knew it was a federal proceeding. Yes, Your Honor. Can I ask you, unless we, so moving on, we may come back to it, but moving on for just a moment, this three-level enhancement that is for an offense that resulted in substantial interference with the administration of justice. Could you describe the reason that's an appropriate enhancement here, and then address the question whether such an enhancement would be appropriate in a circumstance that I don't think either party briefed directly, but that whether the mere fact that an attack is made on a witness to send a message, sends a message of intimidation, that itself is an interference with the administration of justice generally. So you could first give what you're relying on to say there was substantial interference, and then address my more general question, isn't any offense of this sort a substantial interference because it's sending a general message that people should be intimidated from cooperating with the government? Perhaps just as if somebody made an announcement in the prison saying, if anybody thinks of going and testifying for the government in any prosecution, this is what's, they're going to get beaten up or maybe killed. Does everybody understand that? Would that be something that would? Well, that's obstruction of justice generally, sure, and I don't. We're asking about the particular guideline. But with this particular guideline in Commentary Note 1, they have the more specific indications of when such thing is appropriate, and that's what the district court relied on. The comment that you're talking about says that those things will satisfy it. They don't say that those things are necessary to satisfy it. No, I don't think it gets more specific than that. That's correct, that this is just inclusive, not exclusive, and it's not mandatory. I'm not sure that I'm going to be able to answer Your Honor's questions with regard to a more general topic. I do know that in this instance, based on these facts where we had. Consider this hypothetical. Supposing that in retaliation for testifying in a federal case, the defendant beats up or kills a witness, but in the particular circumstances of the case, it has no effect on the trial in which the witness was, because the trial proceeds without that witness or because the beating or killing occurs after the thing is all over, in retaliation after the fact, or because the person pleads guilty irrespective of it, so that it has no effect of the sort that's mentioned in the note on the progress of that particular trial. Nothing changes because of the killing of this witness in retaliation, but it does have the effect of communicating a message to all the population of the prison saying, this is a dangerous thing. If you think about cooperating in a proceeding, in a federal proceeding, you're going to get killed or badly beaten up. Does that qualify? The question is, does that qualify for addition of points under this guideline? I suppose it could, depending on the facts, Your Honor. I've given you the facts. Well, but there's more to it than that. There's what type of proceeding. Just in this case, we had somebody who couldn't testify for a number of weeks, so I'm not prepared to answer Your Honor's question generally. I'm sorry. In this case, why is there substantial impact on the administration of justice? There was a three-week delay in a cross-examination of a witness. What district court factual findings support that in this case, there was substantial interference? Well, the record at pages A930 to 933 is where the district court discussed that and laid out his reasons, referring to the fact that the list of reasons was just inclusive, not exclusive. But, in fact, here, this is a lot more than what Your Honor's hypothetical and what the included lists are, are interfering or providing a false statement. This is actual physical harm intended to entirely prevent someone from furthering their testimony. He was on the third day of his testimony when this happened. So that when the statements were made, that were clearly made that this was supposed to be a very severe beating, that he was supposed to have profound effect in that immediate matter, that what make one proud and give and take for possible Latin King honorary status, those things justify the application. Also to the intent, not to the actual effect, right? You could intend to have a huge effect, but that doesn't necessarily mean it had the actual effect, right? Well, I think this goes both ways. I think, right, this is a case where we could have had worse. We could have had less. Let me ask you this. In the sentencing, the judge said, in connection with this, that the assistant U.S. attorney who prosecuted the underlying case testified credibly that the victim was different after the beating in terms of remembering things. What is that based on? I mean, I read the sentencing, but when he says the AUSA testified credibly, how did that happen? Was there a hearing? I don't understand what that means. The AUSA, I'm sorry, testified during this trial, testified in Mr. Cotto and Mr. Escalera's trial. Tom Deskowitz was the trial AUSA from the prior proceeding, in which Maldonado was a witness. And then he testified during this proceeding, yes. And he wasn't the same person that he was? Okay. Yes. And the other complicating thing is where I was going next, let alone that problem. But also in that case, the jury wasn't ever, there was no explanation to the jury for why he came back with a different appearance and different affect. But in any event, the effect here was, in my opinion, and I understand the court's concern with the general problems, but in this case, this is a much more severe consequence than just interfering or just yelling something out. It was the actual question. The question is not challenging the sufficiency of the evidence. The question is simply whether there is another basis, in addition to the basis that you're relying on, is there another basis for finding, does it require, does the guideline require that there be an effect on this trial, on the trial in which the witness testified, for which the retaliation occurred, or can that guideline be satisfied by evidence of intimidation of people who might be witnesses in another proceeding from testifying? I think that would be a harder case for the government to present, for sure, that it would be difficult to show that impact, of course. In this case, again, the direct impact was clear. So I think the application is outlined. The judge didn't do it lightly. He provided the explanation in the record, as stated in the record, at 930 to 933, and found, and with regard to those findings, there was no clear error. There was nothing there, when you're making that finding by a preponderance, the evidence here, there's nothing in those findings that the judge made that were wrong, that were incorrect, that were factually incorrect. So with regard to that matter, this court should affirm the application of Guideline 2J1.2B2. Unless there's further questions. Thank you. If I could just briefly respond on the last matter. First, Judge LaValle, I have a difficult time conceptualizing how that guideline can be applied in the more general way that you've been describing for a couple of reasons. First, it's my understanding that the specific offense characteristics in Chapter 2 really sort of represent the compromise of the sentencing commission between a charge-based sentencing system and then having these little bump-ups or decreases for the manner in which a specific offense is actually carried out. Now, I understand that your hypothetical doesn't necessarily mean that some cases might not qualify, some cases of this nature, but it seems to me that if the effect, the substantiality can pertain and the causation as well that this court is required to completely other proceedings other than the one in which the retaliation or interference takes place, that that's going to sweep in a whole lot of cases to the point where essentially that compromise is just eradicated and entire classes of cases will become subject to this three-level bump-up. So philosophically, I'm not sure that I can see how it would apply. I don't have the guideline in front of me, but I think I'm also correct to say that each of the examples in the note which this court has required the interference to be at least as severe as, substantial as, really suggest that it is in the proceeding just by the manner in which they're phrased that the defendant was being tried, for example. The phrase clearly refers to the proceeding. So I think by the technical... It doesn't say that the guideline applies only in those cases. No, I understand the Court's point, but to the extent that the commentary, so long as it's not adding something to the guideline, is sort of a binding interpretation of it, if every example you have suggests that it is talking about the proceeding in which the defendant interfered, then that would suggest to me that that's the way the guideline is supposed to apply. As to the evidence in this case, I don't want to diminish what happened to Mr. Maldonado at all, but what I would say is this. Unless I'm mistaken, AUSA Duskois' testimony about how this impacted the trial was pretty terse and pretty vague. He had difficulty remembering some things, his answers were shorter, and his capacity was substantially impaired, I think was the phrase he used. And I think that's about the extent of the testimony about how this impacted the trial that the district court relied on in imposing this enhancement. I would also point out that he was on his second or third day of testimony. He had already completed his direct testimony and had begun his cross-examination. So unless the theory here is that he was so awful on cross-examination, of which we have no evidence, unless you want to work backward and say that the acquittal on some counts is somehow traceable as evidence to that, then I don't know how we get to the kind of substantiality that's required under the guideline in this court's cases. Was there cross-examination or was there redirect testimony as well? He had finished, I think, one day of cross-examination and was scheduled for two more, but there had not yet been redirect. There what? He had completed his direct testimony and had done at least one day of cross-examination, but I can't remember if it was more than one day. Was there redirect following this? That's not reflected in the record, I don't think. I'm curious why his answers were shorter. It's rather conventional for a United States attorney, for an assistant U.S. attorney, to tell witnesses on cross-examination, give short answers. Don't go talking beyond what the question asks. Just ask the question and nothing else. It's very difficult to tell what the actual picture looked like here, just from what Attorney Duskowitz said. He was suggesting that his mental capacities were affected by the beating. Well, he said he seemed to not be able to clearly remember some things that he previously recalled. One could interpret that as a physical deficit or as being unwilling, and there's no clarification of it, really, I don't think, in the record. Either physical deficit or unwillingness would be something in the direction of satisfying the comment to the guide doc, wouldn't it? I suppose if you could show... If the person is unwilling because he's been beaten up, that's exactly what the... But I think then you run into the problem here of this being a two-month trial, right? And a two-month trial with multiple, many, many witnesses, many, many cooperators, and the question becomes... Then you get to the causality question, I guess. What is the connection between that deficit, whether it's a matter of will or whether it's a matter of damage, and... Your point is that the benefit that he would give to the government by his testimony was all given. You can't... Right. Essentially, yes. Of course, you'd have to show that it changed the nature of the outcome of the trial or something like that. If it interfered with that particular witness's ability to testify, that would be substantial interference in and of itself, regardless of whether or not the government had a lot of other proof or it wasn't significant in the grand scheme of the trial. Are you suggesting that even if it interfered with that witness, that the AUSA testified that he was basically unable to communicate after the beating, either physically or mentally, it's not clear, but let's just assume that was credited? You're saying you have to show that it somehow affected the government's overall proof? No, I wouldn't go that far, but what I do think is that the simple, vague statement that he seemed to have some difficulty recalling some things that he previously recalled more clearly... About basically unable to communicate. Well, he was unable to communicate for several weeks, but then he went back and he testified. I mean, there was definitely an interruption. There was a delay in the trial. There's no question about that. Why isn't almost that enough? I mean, if you assault the witness, you definitely substantially interfere with that witness's ability to show up in the regular course and present his testimony the next day, and that seems a substantial interference with the administration of justice in that trial. But I don't think it rises to the level of the kinds of things that are in the note and that this court had said it has to rise. You're saying it would require us to extend beyond the note where our case law takes us. Right. It's not the same as having, for example, the example I keep thinking of is a judicial decision founded on perjury testimony, I think, is one of the note examples. Sure, I'm not denying that it had some impact. I think the question was that in view of the fact that he had completed his direct testimony for the government, that an impairment of his capacities no longer impaired the government's presentation of its evidence to the jury because before being beaten up, he had done everything that he was to do for the government, and so that his impairment of capacities didn't and couldn't have hurt the government with respect to the outcome of the trial. Well, I do think if you think about it from the point of view of from what point of view this guideline is aiming at, after all, it is an enhancement. It's something that bumps up not the anchoring point of the sentence, right? I mean, it does seem sort of to be aimed at did this conduct, you know, somehow either tank the ability of the government to adequately present its case or lead the court into some kind of error or the fact finder into some kind of error that, you know, impugns the integrity or reliability of the judicial proceeding. If he's beaten up when he's in the midst of his direct testimony and he hasn't finished his direct testimony, he still has testimony that the government had expected him to give that would support a conviction, but after the beating he comes back and suddenly, whether it's because of mental deficit or because he's scared and has changed his mind, he suddenly doesn't give the answers or doesn't give as well or as convincingly the answers that the government expected to have in support of its proof. I don't see any reason why that shouldn't be considered an adverse effect on the administration of justice. I think that's a fair point and I think that that's what I was getting at when I was saying that, you know, conceivably you could do so poorly on cross-examination even that that would, you know, that that would count, but then I think we loop back to the sort of evidentiary point in this case, which is that we have these, we definitely have the delay, but in terms of the actual description of what went wrong with this witness or what was complained of about this witness after the beating, it's very, very vague and one would have liked, I suppose, some examples of, you know, what was he unable to answer. Was it a, you know, was it a material matter? Was it something important? Are we talking about forgetting a detail or are we talking about forgetting the substance of something important? And we simply just have this sort of like his capacity was substantially diminished, which I don't even know what that really means, to be honest. To the parties, I think we could use a little bit more help on the two issues. We've spent a good amount of time this morning, so if we could get a, say, single-spaced, no more than 12-page letter brief two weeks from today addressing first the briefing on whether knowledge of the federal nature of the official proceeding is an essential element of the statute and then whether under this enhancement for substantial interference with the administration of justice the general intimidation of a cooperator with a beating of this sort can constitute substantial administration of justice because of its effects outside this particular case, but more generally on the intimidation of witnesses. Is that understandable? Yes, thank you. Thank you both. And we will take the matter under advisement.